UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THE KROGER CO.,<br><br>Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMAND |

# COMPLAINT

This is an action under Title I and Title V of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Portia Taylor ("Taylor"), who was adversely affected by them. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant The Kroger Co. ("Defendant") violated the ADA when it denied her request for a reasonable accommodation and stopped scheduling her for work shifts because of her disability. The EEOC alleges further that Defendant unlawfully retaliated against Taylor for engaging in conduct protected by the ADA.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331,

1337, 1343, and 1345. This action is authorized pursuant to: Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has conducted business in the State of Georgia and continuously maintained at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

6. At all relevant times, Defendant has been a covered entity under Section

101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Taylor filed a charge with the Commission alleging violations of the ADA by Defendant.

8. On April 4, 2024, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On June 12, 2024, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

11. Taylor is a qualified individual with disabilities under Section 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

12. Taylor has metastatic breast cancer with bone metastases and a record of the metastatic breast cancer with bone metastases.

13. The breast cancer substantially limits normal cell growth, a major

bodily function.

14. Taylor also suffers from permanent nerve damage to her lower extremities, caused by her cancer treatments.

15. The nerve damage substantially limits Ms. Taylor's ability to stand and walk, which are major life activities.

16. Taylor's medical conditions substantially limit her in major life activities including, but not limited to, normal cell growth, standing, and walking.

17. Taylor has suffered from her medical conditions since at least 2019.

18. In early 2023, Taylor applied for the position of cashier at Defendant's store located at 1225 Caroline St NE, Atlanta, Georgia 30307 ("the Caroline Street location").

19. Taylor interviewed for the position with an assistant store manager who performed many human resources functions for the Caroline Street Location ("the HR manager").

20. During the interview, Taylor informed the HR manager of her disabilities.

21. Defendant hired Taylor in March 2023 for the position of cashier.

22. Taylor's primary job responsibilities as a cashier included scanning items, bagging groceries, and processing customer payments.

23. Taylor can perform each of her primary job responsibilities while

sitting.

24. As a cashier, Taylor was also responsible for cleaning her workstation at the conclusion of each shift.

25. Taylor can comfortably stand long enough to clean her workstation at the conclusion of each shift.

26. Taylor can comfortably stand for short-to-moderate amounts of time, so long as she is afforded adequate sitting breaks.

27. Taylor was typically assigned to work four-and-a-half hour shifts.

28. Taylor was required to continuously stand for the entirety of each shift, except for one ten-minute break per shift.

29. After her first few shifts, Taylor began experiencing significant leg pain.

30. Taylor asked two different supervisors whether she could sit in a chair or stool while working at the cash register.

31. Both supervisors responded that sitting at the register was against store policy.

32. Over the next few weeks, Taylor's leg pain worsened, and she was admitted to the emergency room because of the pain on or about April 10, 2023.

33. On or about April 11, 2023, Taylor's medical provider wrote a note for Defendant, informing Defendant of Taylor's disabilities and requesting that it

accommodate her need to sit while working.

34. The same day, Taylor's medical provider gave her a second document, indicating that she was cleared to return to work on April 18, 2023.

35. Within one or two days of her emergency room visit, Taylor contacted the store manager—the highest-ranking employee at the Caroline Street location—and notified him of her recent medical emergency and medical provider's instructions.

36. Taylor specifically asked the store manager if she could sit in a stool or chair while working at the register.

37. The store manager responded that Defendant does not "do accommodations like that. We will find you something light around here to do."

38. The store manager instructed Taylor to email him the medical documents and to plan to return to work on or about April 18, 2023.

39. Taylor promptly emailed both documents to the store manager.

40. Hearing nothing from Defendant, Taylor attempted to contact the store manager on or about April 18, 2023, to inquire about her request for accommodation and return to work, but Taylor was unable to reach the store manager.

41. On or about April 20, 2023, Taylor successfully contacted the store manager by phone.

42. During the phone call, the store manager told Taylor that he had

forgotten to discuss the accommodation request with the HR manager, but assured Taylor that he would do so soon.

43. Neither the store manager nor any other employee contacted Taylor regarding her accommodation request or return to work between on or about April 20, 2023, and on or about April 24, 2023.

44. Hearing nothing from Defendant, Taylor directly contacted the HR manager on or about April 24, 2023.

45. The HR manager told Taylor that she had not received notice of Taylor's accommodation request or any supporting medical documentation.

46. The HR manager then obtained the medical documentation that Taylor had previously provided to the store manager.

47. The HR manager informed Taylor that her medical documentation was insufficient because it did not indicate the duration of her restriction.

48. The HR manager directed Taylor to send additional medical documentation containing this information by fax, and she provided Taylor with the store's fax number.

49. On or about April 26, 2023, Taylor's medical provider sent a second letter by fax to the number provided, which requested that Defendant accommodate Taylor's need to sit during work for the duration of her employment.

50. Between on or about April 26, 2023, and on or about May 7, 2023,

Taylor repeatedly called the Caroline Street Location, but could not reach either the HR manager or store manager.

51. On or about May 15, 2023, Taylor submitted an internal complaint of disability discrimination via Defendant's online portal.

52. On or about May 23, 2023, Defendant sent Taylor a message via the online portal, indicating that Defendant had concluded its investigation but could not reveal the findings because they contained sensitive medical information.

53. Defendant did not contact or interview Taylor during its investigation of her internal complaint.

54. On or about May 23, 2023, Taylor responded to Defendant's portal message, inquiring further as to why Defendant could not release the findings, since the investigation concerned Taylor's own medical information.

55. Defendant did not respond to Taylor's message, nor did it otherwise contact her between on or about May 23, 2023, and on or about August 8, 2023.

56. On or about August 8, 2023, Defendant responded to Taylor's May 23, 2023, message, stating that Taylor's complaint could not be substantiated.

57. The next day, Taylor replied to Defendant's message, indicating that she had filed a charge of discrimination with the EEOC.

58. Defendant responded to Taylor, stating that the matter had been referred to its legal department, and that any further communication between the parties

should be handled via their respective attorneys.

59. Defendant has not contacted Taylor further regarding her accommodation request or return to work.

60. Defendant has not scheduled Taylor to work since on or about April 11, 2023.

61. Defendant denied Taylor's request for a reasonable accommodation for her disabilities.

62. Taylor could perform the essential functions of her position with the reasonable accommodation she requested.

## STATEMENT OF CLAIMS

63. Since at least April 2023, Defendant has engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b), and 42 U.S.C. § 12203. These unlawful employment practices include but are not limited to: (1) unlawfully denying a qualified employee's request for reasonable accommodation; (2) unlawfully failing to schedule a qualified employee to work because of her disabilities; and (3) retaliating against an employee for engaging in conduct protected by the ADA.

### *Allegations Common to All Claims*

64. Taylor is a qualified individual with disabilities under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

65. At all times relevant to this action, Defendant was aware of Ms. Taylor's disabilities.

66. At all times relevant to this action, Taylor was able to perform the essential functions of the cashier position with a reasonable accommodation.

67. The effect of each of the employment practices complained of herein has been to deprive Taylor of equal employment opportunities and otherwise adversely affect her status as an employee because of her disabilities and in retaliation for engaging in protected activity.

68. The unlawful employment practices complained of above were intentional.

69. Each of the unlawful employment practices alleged herein were done with malice and/or reckless indifference to Taylor's federally protected rights.

### *Failure to Accommodate*

70. Taylor identified and requested an accommodation that would allow her to perform the essential functions of her job.

71. Taylor's requested accommodation was reasonable.

72. Defendant denied Taylor's request for a reasonable accommodation.

73. Defendant failed to conduct a reasonable investigation into Taylor's requested accommodation and failed to meaningfully interact with or engage with Taylor or anyone on Taylor's behalf related to the requested accommodation.

### *Failing to Schedule Taylor for Shifts*

74.  Following Taylor's April 2023 request for accommodation, Defendant never again scheduled Taylor to work.

75.  Following Taylor's April 2023 request for accommodation, Defendant ignored Taylor's repeated attempts to obtain an accommodation for her disability and return to work.

76.  Defendant took these adverse employment actions towards Taylor because of her disabilities and/or need for a reasonable accommodation.

### *Retaliation*

77.  Taylor engaged in conduct protected by the ADA when she complained internally about disability discrimination.

78.  Defendant subjected Taylor to an adverse employment action when it stopped scheduling Taylor for shifts at work and otherwise ignored her attempts to obtain a disability accommodation and return to work after she complained of disability discrimination.

79.  There is a close causal connection between Taylor's protected conduct and the adverse employment action.

### **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant, their officers,

agents, servants, employees, attorneys, successors, assigns and all persons in active concert or participation with Defendant, from engaging in employment practices that discriminate against employees because of disability.

  B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled employees and which eradicate the effects of past and present unlawful employment practices.

  C. Order Defendant to make Taylor whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

  D. Order Defendant to make Taylor whole, by reinstating Taylor and reasonably accommodating her, or by providing appropriate front pay in lieu of reinstatement, in amounts to be determined at trial, as well as other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

  E. Order Defendant to make Taylor whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

  F. Order Defendant to make Taylor whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined

at trial.

G. Order Defendant to pay punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

I. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

ROBYN M. FLEGAL
Supervisory Trial Attorney

/s/ Matthew D. O'Brien
Matthew D. O'Brien
Trial Attorney
Georgia Bar No. 825255

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30
matthew.obrien@eeoc.gov
Telephone: 470-531-4776
Facsimile: 404-562-6905